UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **SCOTT W LANDRY** | **CASE NO. 2:23-CV-01538** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **USA ET AL** | **MAGISTRATE JUDGE LEBLANC** |

## MEMORANDUM RULING

Before the Court is a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(B)(1) (Doc. 30) filed by Defendant-in-Counterclaim, Scott W. Landry.

## BACKGROUND

On February 9, 2023, an FTR City Carrier delivering mail backed into a driveway, striking and killing the four-year-old minor child, Jace Leo Landry (hereinafter referred to as "Leo").[1] Leo is survived by his brother Z.L., his grandfather Scott W. Landry, and his parents Aaron Landry and Charlee Melancon.[2] Aaron Landry and Charlee Melancon are the biological parents of Z.L. and Leo.[3] The Complaint alleges that in March 2022, Aaron Landry and Charlee Melancon abandoned their minor children, leaving them with their neighbor. The paternal grandfather, Scott W. Landry and his wife, Cathy Landry immediately picked the children up and have provided food, clothes, a home and emotional support to the children since the parents left them at the neighbor's house. Aaron was

---

[1] Complaint, ¶ 6, Doc. 1.
[2] *Id.* ¶ 7. Plaintiff's exhibits also reflect that Leo has three (3) other half or step- siblings (B.L.C-Plaintiff's exhibits 6 and 13) (J.R -Plaintiff's exhibits 7, 8, 9 and 10) (G.L.M.- Plaintiff's exhibit 5) all of which are being raised by someone other than Charlee.
[3] *Id.* ¶ 8.

arrested and incarcerated some time after the children were abandoned and the whereabouts of Charlee was unknown.

On May 10, 2022, Scott Landry visited the Calcasieu Correctional Center, where Aaron was incarcerated, and had Aaron execute a grant of provisional custody appointing Scott provisional custodian of both Leo and Z.L.[4]

## RULE 12(b)(1) STANDARD

Where a plaintiff's claims are defective because she lacks "standing" to assert her claim, it is proper to dismiss the claims for lack of subject matter jurisdictions under Rule 12(b)(1). See *Moore v. Bryant*, 853 F.3d 245, 248, n. 2. (5th Cir. 2017) ("Dismissals for lack of Constitutional standing are granted pursuant to Rule 12(b)(1)). Rule 12(b)(1) of the Federal Rules of Civil Procedure provides:

> Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction. . .

A court may base its disposition of a motion to dismiss under Rule 12(b)(1) on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Robinson v. TCI/US West Communications, Inc.*, 117 F.3d 900 (5th Cir. 1997), citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, (1981).

---

[4] Plaintiffs exhibit 2, Affidavit of Scott Landry.

Courts may consider affidavits and exhibits submitted in connection with a Rule 12(b)(1) motion to dismiss. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994). Once challenged with competent proof, the plaintiff must prove by a preponderance of the evidence that the court has subject matter jurisdiction. *Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986). A motion to dismiss under Rule 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claims that would entitle plaintiff to relief. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

## **LAW AND ANALYSIS**

Both Scott Landry (on behalf of Leo's brother Z.L.) and Charlee have asserted wrongful death claims in accordance with Louisiana Civil Code article 2315 and 2315.2. the Louisiana Civil Code bestows the right of action only to certain individuals. *Tajonera v. Black Elk Energy Offshore Operations, L.L.C.*, 16 F.Supp.3d 55, 761 (E.D. La. 2014); *Taylor v. Giddens*, 618 So.2d 834, 880 (La. 1994). Charlee asserts standing as the biological mother of Leo. Louisiana Civil Code article 2315.1(A)(2) and 2315.2(A)(2). Scott asserts standing on behalf of Z.L. based on the combined language of 2315.1(A)(3), 2315.2(A)(3), and 2315.2(E).

Scott moves to dismiss all of Charlee's claims and theories of liability asserted related to the death of Leo. Scott maintains that because Charlee abandoned the minor children, Louisiana law does not allow her to have standing to bring the survival and wrongful death claims.

Louisiana Civil Code articles 2315.1(E) and 2315.2(E) establish the same rule: a father or mother that has abandoned the deceased during his minority is deemed not to have survived him. Thus, these articles act as barriers to a parent who failed during the child's life to take parental responsibility from bringing an action to benefit from the child's death. *Miles o/b/o Myles v. Howell*, 277 So.3d 1218, 1222, (La.App. 2 Cir. 6/26/19), *writ denied sub nom.* 280 So.3d 603 (La. 10/15/19).

Scott asserts that Charlee abandoned Leo eleven months prior to Leo being killed. Louisiana courts have established that a failure to provide emotional or financial support constitutes abandonment preventing a parent from asserting survival and wrongful death claims and finding that when those facts are present, the right of action would then belong to the surviving siblings. *Dawson v. Gray & Gray*, 2018 WL 5284316 (La.App. 4 Cir. 10/24/18) (unpublished). Louisiana Civil Code article 3506 provides that abandonment is presumed when the parent left her child for a period of at least twelve months and failed to provide for the child's care and support, without just cause, thus demonstrating an intention to permanently avoid parental responsibility. Scott further relies on guidance from Louisiana Children's Code article 1015, which provides the statutory grounds that a court may involuntarily terminate the rights and privileges of parents and includes a definition as follows:

> (4) Abandonment of the child by placing him in the physical custody of a nonparent … or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
> …

(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.
(c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.

Scott provides the following evidence of abandonment by Charlee:

1. Charlee was a drug addict who was more concerned with finding and taking drugs than caring for her children.[5] Even while pregnant, Charlee was on drugs.[6]

2. Charlee did not feed her children.[7] When she dropped off the two children at a neighbor's house, Charlee's children were both skin and bones, and the only food in her home was a half-thawed bag of French fries.[8]

3. Charlee did not provide a clean home for the children, and their beds had no sheets, and were covered in black mold, with garbage everywhere in the trailer.[9]

4. Charlee did not provide clean clothes for the children, and when she left them with her neighbor at 2:00 p.m., they were wearing only their underwear.[10]

5. Charlee did not bath her children.[11]

6. Charlee left her children with a neighbor without making any arrangement for their care.[12]

---

[5] Plaintiff's exhibits 1, 2, 3, 4, 6, 9, and 10; See also Plaintiff's exhibit 12, Affidavit of Agnes Gentry.
[6] See Plaintiff's exhibits 1 and 12.
[7] Plaintiff's exhibits 1 ,2, 8, 12, and 13.
[8] Plaintiff's exhibits 1, 2, and 12.
[9] Plaintiff's exhibits 1, 2, 8, 12, and 13.
[10] Plaintiff's exhibits 1, 2, 8, and 12.
[11] Plaintiff's exhibits 8 and 13.
[12] Plaintiff's exhibit 2.

7. Since the day she left her children with a neighbor, she made no attempt to play any role in Leo's life.[13]

8. Since the day that Charlee left her children with her neighbor, she did not make any effort to visit Leo at Scott's house. On the few occasions that she called Scott's home, she would promise to visit the boys and then never show up.[14] Scott had no ability to facilitate contact between Leo and Charlee because he did not know where she was, and her phone typically did not work.[15]

9. Since the day she left her children with a neighbor, Charlee did not make any effort to provide emotional support for Leo.[16]

10. Since the day she left her children with a neighbor, Charlee did not make any effort to provide financial support for Leo.[17]

11. Leo's birthday was a few weeks before he passed. Charlee did not visit, call, send a gift or a birthday card to Leo.[18]

Plaintiff has also provided numerous other affidavits from relatives of Charlee's other three children who attest that Charlee has abandoned and lost custody of these three children as well.[19]

In her opposition, Charlee, through counsel, submits her own self-serving affidavit, and the affidavit of Cody Dronette, the person she has been living with for several

---

[13] Plaintiff's exhibits 1 and 3.
[14] *Id.*
[15] *Id.*
[16] Plaintiff's exhibits 1 and 3.
[17] Plaintiff's exhibit 1.
[18] *Id.*
[19] Plaintiff's exhibits 1-13.

months.[20] In their affidavits, Charlee and Cody attest that they have visited and called the boys. Cody also attached an undated, unauthenticated, and unverified alleged screen shot of Charlee with her son. Even if the Court were to consider the screenshot picture of Charlee and her son, one visit over a 9-month period of time does nothing to convince this Court that Charlee had not abandoned her children. The Court will not consider these two self-serving affidavits without supporting evidence and finds that they are not competent proof. If calls were made, Charlee could have provided evidence to support that allegation.

Furthermore, if visits were made, the evidence submitted by Plaintiff reflect that even now, Charlee appears to have no relationship with her other son, Z.L. On July 26, 2023, a Hearing Officer Conference was held at the Fourteen Judicial District Court to resolve visitation issues with both Aaron and Charlee and their son Z.L. The Recommendations from the Conference notes the following: "Despite being given Whistle Stop visitation, Charlee did not have any visits. She evidently unsuccessfully attempted to get some visits with Scott supervising. The attorneys conferred and it was deemed appropriate to visit in accordance with the HOR, but still no visits took place."[21] The Recommendation granted sole custody of Z.L. to Scott Landry, with Whistle Stop visitations for Charlee.[22] While this particular recommendation applied to Z.L., it speaks volumes to this Court as to Charlee's interest, or lack thereof, in her children, including her deceased son, Leo.

---

[20] Plaintiff-in-counterclaim exhibits 1 and 2, Affidavit of Charlie Melancon, and Affidavit of Cody Dronette, respectively.
[21] Plaintiff's exhibit 12, CM/ECF p. 3, Doc. 30-13.
[22] *Id.*

Based on the evidence submitted, the Court finds that Charlee abandoned her children, and specifically, she abandoned Leo.  She did not make serious efforts to visit or communicate with her son.  She failed to provide any emotional or financial support to Leo when he was alive.  She failed as a mother.

## **CONCLUSION**

For the reasons explained herein, the Court will grant the Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(B)(1) (Doc. 30) filed by Defendant-in-Counterclaim, Scott W. Landry, and dismiss any and all wrongful death and survival claims of Charlee Melancon.

**THUS DONE AND SIGNED** in Chambers on this 2nd day of August, 2024.

_____
**JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE**